IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **COURTNEY L. MORGAN,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-13-1394 |
| **CITY OF ROCKVILLE,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This Memorandum Opinion disposes of Defendants City of Rockville, Maryland and Susan Swift's Motion to Dismiss, ECF No. 10, and accompanying Memorandum, ECF No. 10-1; Plaintiff Courtney L. Morgan's Opposition, ECF No. 16; and Defendants' Reply, ECF No. 17. The scheduled hearing was cancelled and is not necessary. *See* Loc. R. 105.6. For the reasons stated below, Defendants' Motion to Dismiss shall be DENIED.

**I. BACKGROUND**

Plaintiff filed a complaint in the Circuit Court for Montgomery County on April 4, 2013, which was removed to this Court on May 13, 2013. *See* Notice of Removal, ECF No. 1. The original Complaint alleged violations of Title VII (42 U.S.C. § 2000e *et seq.*) and 42 U.S.C. § 1981. *See* Compl., ECF No. 2. On July 5, 2013, Plaintiff requested leave to file an Amended Complaint, ECF No. 9, which was granted as a matter of course, ECF No. 11. The Amended Complaint does not include the two previous counts, and instead alleges violations of 42 U.S.C. § 1983 based on Equal Protection. *See* Am. Compl., ECF No. 13. On July 24, 2013, Defendants

filed the pending Motion to Dismiss the Amended Complaint, ECF No. 10, which has been fully briefed.

For purposes of considering Defendants' motion, the Court accepts the facts that Plaintiff alleged in his Amended Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff is an African-American male who worked for Rockville as Division Chief of Inspection Services from August 2011 until February 2012. Am. Compl. ¶¶ 6, 15–16.[1] Plaintiff had many subordinates and adequately and "completely performed all of the functions, duties and responsibilities of his employment with Defendant City of Rockville." *Id.* ¶ 8. "Mr. Morgan was performing his job at a level that met the City of Rockville's legitimate expectations pursuant to emails and other correspondences." *Id.* Throughout Mr. Morgan's employment, Defendant Susan Swift supervised Plaintiff in her capacity as Planning & Zoning Director. *Id.* ¶ 4.

During his employment, Plaintiff realized that some Caucasian subordinates, as well as other Division Chiefs "with similar education, skill level, and responsibility as Plaintiff," were paid more than Plaintiff. *Id.* ¶¶ 9–10. Without providing any underlying facts, Plaintiff alleges "that Susan Swift, his supervisor[,] engaged in a pattern of work place harassment and racial discrimination against Plaintiff and that Swift's unlawful conduct was subsequently ratified by the City's former Human Resources Director." *See id.* ¶ 11.

---

[1] Plaintiff's Amended Complaint alleges that Plaintiff was hired on August 1, 2011, *id.* ¶ 6, and terminated February 6, 2011, *id.* ¶ 16. Defendants argue this was an error and that Plaintiff was terminated on February 6, 2012. *See* Defs.' Mem. 4 n.3. However, Plaintiff, in his opposition, repeats the February 6, 2011 allegation, Pl.'s Mem. 2, ECF No. 16, raising the possibility that the hire date, rather than the termination date, might be erroneous. This might be an oversight by Plaintiff or might be a factual dispute. I need not resolve the question to resolve this motion because exhaustion, statute of limitations, and other time-related defenses are not at issue.

The City's employee manual, Plaintiff alleges, provides that new employees like Plaintiff are probationary for their first six months. *Id.* ¶ 12. However, they are entitled to a three-month evaluation, which Plaintiff claims all Caucasian employees received and he did not, followed by a six-month evaluation. *Id.* The three-month and six-month evaluations are compared to make decisions about permanent employment. *Id.* ¶ 13. So long as the employee progresses between the three-month and six-month evaluations, "a non-probationary job awaits." *Id.* ¶ 14.

On February 1, 2011, Plaintiff received his six-month evaluation, where Swift failed him in "every conceivable performance category." *Id.* ¶ 15. Plaintiff claims this evaluation was conducted by Swift as a pretext to terminate Plaintiff based on his race. *Id.* Five days later, Plaintiff was terminated based on that review. *Id.* ¶ 16. He complained to Carlos Vargas, Human Resources Manager, who refused to investigate Plaintiff's claim of racial discrimination. *Id.* Plaintiff alleges that Vargas's inaction was part of a policy and custom of inaction, which, by failing to conduct good faith investigations of racial discrimination, condones discrimination. *Id.* ¶ 17.

After Plaintiff's termination, the City hired the law firm of Saul Ewing, LLC, to conduct an investigation of employee complaints of racial discrimination. *See id.* ¶ 18. The firm never interviewed Plaintiff, investigated his claim, or released the report to the public. *Id.* "Plaintiff believes that the Saul Ewing report was conducted in bad faith to suppress incidents of racial discrimination reported by Plaintiff and thus said report is a sham." *Id.* ¶ 19.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This Rule's purpose "'is to test the sufficiency

3

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing the standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. When ruling on such a motion, the Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

That said, "'factual allegations must be enough to raise a right to relief above a speculative level.'" *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 472–73 (D. Md. 2009) (quoting *Twombly*, 550 U.S. at 545). Particularly, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). In the context of employment discrimination,

> the Supreme Court [has] held that a Title VII plaintiff does not have to allege a prima facie case of employment discrimination to survive a motion to dismiss.

4

> [*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).] All that a Title VII plaintiff must provide is "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 508 (quoting Fed.R.Civ.P. 8(a)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* at 515 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

*Chernova v. Elec. Sys. Servs., Inc.*, 247 F. Supp. 2d 720, 722 (D. Md. 2003).

### III. DISCUSSION

#### A. Opposition to Plaintiff's Motion for Leave to Amend

Defendants filed their first Motion to Dismiss on May 13, 2013. On July 5, 2013, Plaintiff filed his Motion for Leave to Amend, the responses to which were due on or before July 22, 2013. *See* Loc. R. 105.2(a). On July 24, 2013, Defendants filed the pending Motion to Dismiss the Amended Complaint. Although Defendants selected the wrong event code on CM/ECF, failing to label it as an opposition to the Motion for Leave to Amend, the Motion to Dismiss the Amended Complaint contained an opposition to the Motion for Leave to Amend. As noted, I granted Plaintiff's Motion for Leave to Amend as a matter of course. Because the opposition is untimely and any prejudice to Defendants is mooted in light of their moving to dismiss the Amended Complaint, I will not reconsider the decision to grant the Motion for Leave to Amend. *See Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001) ("A motion for reconsideration is appropriate [1] to correct manifest errors of law or fact or [2] to present newly discovered evidence, or [3] where there has been an intervening change in controlling law." (internal quotation marks omitted)).

#### B. Proper Defendants

Defendants claim that, because a suit against Swift in her official capacity is tantamount to a suit against the City, *see Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (noting that suits against state officers in their official capacity represent only another way to plead an action

against the entity), the only real party in interest for Count I is the City, *see* Defs.' Mem. 19–20. Therefore, because the City cannot be sued for an isolated case of employment discrimination under § 1983, Count I should be dismissed, as it does not name a defendant in an individual capacity. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 818–21 (1985) (noting that municipal liability under § 1983 is limited to policy and custom claims (citing *Monell v Dept. of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694–95 (1978))).

The Amended Complaint does not state the capacity in which Swift is sued and Plaintiff does not respond to this argument; therefore, I consider it unopposed. *See Cincinnati Ins. Co. v. Centech Bldg. Corp.*, 286 F. Supp. 2d 669, 681 (M.D.N.C. 2003) (considering an argument raised in a motion unopposed where the responding party failed to address the argument (citing *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989))); *Ali v. D.C. Court Servs.*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008) ("If a plaintiff . . . files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). However, Defendants' construction of the complaint to exclude claims against Swift in her individual capacity does not accurately reflect the language used by Plaintiff. Certainly, Plaintiff could have been clearer in his Amended Complaint, but the Court must resolve reasonable inferences in favor of the Plaintiff for purposes of a motion to dismiss. A more reasonable interpretation is that Count I is brought against Swift in her personal capacity and Count II is brought against the City. Accordingly, neither count should be dismissed for improper naming of parties.

### C. *Proud* Inference

Common to both claims, Defendants claim that, because the City was the hiring and firing authority for Plaintiff, the City is entitled to the "strong inference" explained in *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991). According to Defendants, *Proud* stands for the proposition that if the same employer hires and fires an individual in a short period of time, there is a strong inference that discrimination did not motivate the decision. Defs.' Mem. 14. Plaintiff responds that *Proud* applies only where the hiring/termination authority is the same person and that the doctrine should not be broadened to apply to entities. Pl.'s Mem. 5–6.

The *Proud* inference applies "where the hirer and the firer are the same *individual*." *Proud*, 945 F.2d at 797 (emphasis added). As a textual matter, the Fourth Circuit did not extend the inference to cases where the hirer and firer are the same organization or governmental entity or employer. Such an application would make little sense as it would apply a "strong inference" of nondiscrimination in nearly every case because the same employer usually is the hirer and firer. Defendants have not identified, and I cannot find, any case law supporting the proposition that the *Proud* inference should be extended to treat an organization or governmental entity as a hiring/firing "individual." Further, it is unclear whether the inference recognized in *Proud* is applicable at the motion to dismiss stage, where all inferences must be drawn in favor of the Plaintiff. *See Ibarra*, 120 F.3d at 474. Accordingly, to the extent the *Proud* inference has any effect at the motion to dismiss stage, it does not apply in this case.

### D. Failure to State a Claim for Employment Discrimination (Count I)

To establish a *prima facie* case of race, color or national origin discrimination, Plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees

outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004)); *see also Hooper v. State of Md., Dept. of Human Res.*, 45 F.3d 426 (4th Cir. 1995) (holding that the factual elements necessary to establish a prima facie case of employment discrimination are the same for Title VII, Section 1981, and Section 1983 claims (citing *Gairola v. Commonwealth of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985))).

Defendants do not challenge the first and third prongs (i.e., that Plaintiff is a member of a protected class and was terminated), but rather challenge the factual basis for Plaintiff's allegations of satisfactory job performance and less favorable treatment. *See* Defs.' Mem. 8. Defendants argue that the facts supporting Plaintiff's disparate pay, harassment, and termination based on race allegations do not raise his right to relief above a speculative level. *Id.* Although Plaintiff alleges that Defendants did not conduct a three-month evaluation and gave Plaintiff negative marks on his six-month evaluation, that theory, Defendants argue, "is insufficient, by itself, to plausibly infer racial discrimination." *Id.* at 9. Additionally, Defendants contend that "Plaintiff asserts with no supporting facts whatsoever that 'all similarly situated Caucasian employees received their 3 month employee evaluation before termination and/or promotion.'" *Id.* at 9 (citing Am. Compl., ¶ 12). This factual gap exists with Plaintiff's allegations of disparate pay among his peers and his allegations that subordinates were higher-paid. *Id.* at 10–11. According to Defendants, Plaintiff has failed to allege any factual basis for his claims of harassment and discrimination. *Id.* Next, Plaintiff's allegation that Carlos Vargas ratified the discriminatory decision, Defendants argue, is unsupported by factual detail regarding the complaint Plaintiff made to Vargas. *Id.* at 11. Defendants conclude that there is no rational or

plausible inference that the failure to investigate a post-termination complaint renders the termination itself discriminatory. *Id.*

In opposition, Plaintiff asserts that he alleged he was meeting Defendants' legitimate performance expectations and that, if he was not, Defendants provided no warning or notice. Pl.'s Mem. 4. Plaintiff argues, citing *Twombly*, 550 U.S. at 556, that his factual allegations, taken as true, suggest a cognizable cause of action even if the actual proof of those facts is improbable. *Id.* (internal citations omitted).

Although Plaintiff's factually parsimonious allegations may not enjoy success on the merits, that likelihood is not the standard for reviewing a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Many of the cases cited by Defendants in their Memorandum involve complaints that allege much greater factual detail than Plaintiff's Amended Complaint. However, those cases do not establish the minimum pleading standard. As stated by one of the very cases Defendants cite, "[t]his court assumes the merits of a dispute will be resolved in favor of the party invoking our jurisdiction in assessing standing and, at the pleading stage, 'presumes that general allegations embrace those specific facts that are necessary to support the claim.'" *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 99 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1004 (U.S. 2012), *reh'g denied*, 132 S. Ct. 1653 (U.S. 2012) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

I assume until convinced otherwise that in preparing and filing this Amended Complaint, Plaintiff and his counsel complied with Fed. R. Civ. P. 11(b)(3). Therefore, those allegations not made upon information and belief must have evidentiary support and counsel has a good faith belief that the others "will likely have evidentiary support after a reasonable opportunity for

further investigation or discovery." *Id.* Accordingly, although Plaintiff's pleading barely passes muster, it is premature to dismiss his claim at the Rule 12(b)(6) stage.

### E. Policy and Custom (*Monell*) Claim (Count II)

Count II of the Amended Complaint alleges another violation of 42 U.S.C. § 1983, but under the framework of *Monell v Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Defendants advance two grounds supporting their motion to dismiss Plaintiff's *Monell* claim. The first ground is that because Swift is sued in her official capacity and a suit against Swift in her official capacity is tantamount to a suit against the City, no individual is named in the Amended Complaint. Therefore, Defendants argue, the City cannot be held liable under *Monell* because vicarious liability is not available for § 1983 actions. Defs.' Mem. 20–21. Second, Defendants argue that Plaintiff has not alleged facts that plausibly would establish a claim under *Monell*. *Id.* at 21–23.

Plaintiff, in opposition, argues that Defendants incorrectly interpret the law and that the City *can* be sued for a *Monell* violation. *See* Pl.'s Mem. 6–7. Plaintiff responds further that he has pleaded his *Monell* claim with the requisite factual basis. *See id.*

Defendants simply are incorrect that the City cannot be sued under *Monell*. Recently, this Court outlined the requirements of *Monell* claims:

> While a municipality is subject to suit under § 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). A municipality cannot be held liable for a § 1983 action under the theory of *respondeat superior*. *Monell*, 436 U.S. at 694. Instead, liability under a *Monell* claim "arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell*, 436 U.S. at 694); *see also Harris*, 489 U.S. at 385 (explaining that a municipality cannot be held liable under § 1983 unless "there is a direct causal link between the municipal policy or custom, and the alleged constitutional deprivation"). There are multiple ways that a policy or

custom may be found, such as "in edicts of the city's formal decisionmaking body or in 'persistent . . . practices of [municipal] officials' having the de facto force of law." *Milligan*, 743 F.2d at 229 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). However, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id.* at 230.

*Garcia v. Montgomery Cnty., Md.*, No. JFM-12-3592, 2013 WL 4539394, at *4 (D. Md. Aug. 23, 2013).

That said, the City "cannot be held liable for personnel decisions over which it did not retain final review authority; that is, it is not liable for decisions committed to [the supervisor's] discretion because there is no respondeat superior liability under § 1983." *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Monell*, 436 U.S. at 691). To hold the City liable for the decisions of its officers, "the decisionmaker must possess 'final authority to establish municipal policy with respect to the action ordered.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). The City is liable only for actions it "'officially sanctioned or ordered.'" *Id.* (quoting *Pembaur*, 475 U.S. at 480). To prevail on this claim, Plaintiff must demonstrate that the City "was aware of the constitutional violation and either participated in, or otherwise condoned, it." *Id.* at 782–83 (citing *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994)).

Plaintiff alleges that "it was customary for Human Resources Manager Carlos Vargas and City Management to condone or turn a blind eye to discriminatory acts by failing to in good faith investigate complaints." Am. Compl. ¶ 17. Plaintiff is entitled to the reasonable inference, *see Ibarra*, 120 F.3d at 474, that his allegation includes that Vargas or a member of City Management possesses final authority to establish municipal policy with regard to investigation of employee complaints, *see Love-Lane*, 355 F.3d at 782. That same allegation supports the reasonable inference, at least at the pleading stage, that the City and Vargas were aware of the

11

failure to investigate and condoned that policy or custom. *Id.* at 782–83 (citing *Hall*, 31 F.3d at 196). Last, the awareness and condoning of the failure to investigate constitute a fair allegation of official sanctioning, as required by *Pembaur*, 475 U.S. at 480. At this stage, Plaintiff need not "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339–40 (4th Cir.1994) (citations omitted). Although quite sparse, the allegations in the Amended Complaint are sufficient to survive a motion to dismiss as they are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Jordan*, 15 F.3d at 338 (stating that "section 1983 claims are not subject to a 'heightened pleading standard' paralleling the rigors of proof demanded on the merits." (quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993))).

### F. Bifurcation under Rule 42(b)

Defendants ask me to bifurcate Count II for discovery and trial pursuant to Fed. R. Civ. P. 42(b). Defs.' Mem. 23. Defendants, citing *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318 (D. Md. 1991), argue, *inter alia*, that Plaintiff's policy and custom claim can proceed only if he can establish his employment discrimination claim. *Id.* Plaintiff does not respond to this request. Bifurcation may be warranted and the parties' specific input at the Rule 16 conference will aid the Court in making this decision. In the meantime, counsel shall conduct an in-person Rule 26(f) meet-and-confer, during which time they will confer with an eye toward development of a joint proposed discovery plan, consistent with this opinion and the Discovery Order that I will enter in this case, to be submitted to the Court at least twenty-four hours prior to the Rule 16 conference. In doing so, they should consider whether discovery may be phased separately for

Counts I and II. If so, proceeding with phased discovery may be appropriate in this case. As for bifurcation at trial, it is quite premature to make that call at the present time.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Amended Complaint is DENIED, and a scheduling order will be entered.

A separate order will be entered.

Dated: December 30, 2013 /S/
Paul W. Grimm
United States District Judge

jwr