_____ FILED    _____ ENTERED
_____ LODGED _____ RECEIVED

MAR − 4 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

COURTNEY L. MORGAN,                    *

    Plaintiff,                              *

v.                                     *        Case No.: GJH-13-1394

CITY OF ROCKVILLE, MD, *et al.*        *

    Defendants.                           *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

This is a race discrimination case brought by Courtney L. Morgan, an African American, against his former employer, the City of Rockville, Maryland (the "City"), and Susan Swift, Director of Community Planning and Development Services for the City, for purported violations of 42 U.S.C. § 1983. This Memorandum Opinion and accompanying Order address Defendants' Motion for Summary Judgment, ECF No. 48. A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED. Morgan's Complaint is dismissed with prejudice.

## I.      BACKGROUND

Morgan posted his resume on a government jobs website and received a call from Susan Swift of the City of Rockville for an interview in April or May 2011. ECF No. 48-2 at 4. The first interview was a phone interview conducted by Swift and two other City employees. ECF No. 48-2 at 7. Swift then called Morgan to offer him a second round interview. *Id.* at 6. At that time, Swift informed Morgan of the salary range, job duties, and her expectations of the position. *Id.* at 10. Swift also participated in the second interview. *Id.* at 12. After the second interview,

Swift and another City employee, Andy Gunning, went to lunch with Morgan. *Id.* at 13. During the lunch, Swift indicated to Morgan that the panel "pretty much came to a consensus for the recommendation . . . [a]nd that [Morgan] was most likely going to be the person that they supported bringing on board." *Id.* at 13.

On June 17, 2011, Swift sent a memorandum to Scott Ullery, the City Manager. She recommended hiring Morgan as the Chief of the Inspection Services Division. ECF No. 48-6. The yearly salary range for the position was approximately $71,000 to $150,000. ECF No. 48-2 at 5. Swift proposed that Morgan's yearly salary be $95,000. ECF No. 48-6. The salary was approved and Morgan was hired.[1] ECF No. 48-2 at 14.

According to Morgan's deposition testimony, at the beginning of his employment, Swift provided him with a PowerPoint presentation outlining her expectations of him. *Id.* at 15–16. She also set up weekly progress meetings for Morgan, where she was typically present. *Id.* at 16. Morgan testified that he was told the purpose of the meetings were to identify his "comfort level[,] where [he] was with meeting with the other two supervisors[,] and how things [were] progressing." *Id.* at 17.

Matt Shanks and Robert Purkey, the fire marshal and supervisor of inspections respectively, were in positions directly below Morgan's. ECF No. 48-2 at 19. Morgan testified that he and these two individuals "had [their] differences." *Id.* at 19. He explained that he did not always agree with Shanks and Purkey on how to interpret the City Code. *Id.* at 19–20. Morgan described one incident where two inspectors conducted a fire inspection; Morgan considered that as one inspection while Shanks and Purkey considered it as two inspections. *Id.* at 20.

---

[1] In Morgan's application, he indicated that his preferred salary was $80,000–85,000. ECF No. 48-3.

2

Morgan testified that another employee, Miguel Moreno, who is Cuban, once complained that Purkey commented on Moreno's accent, saying that others could not understand Moreno. *Id.* at 22. Morgan reported the incident to Swift and spoke to Purkey. *Id.* at 23–24. Morgan did not document the incident but believed that, if the behavior continued, documentation would have been the next step. *Id.* at 23. Morgan said he later learned of other incidents involving Purkey and Shanks. He described one incident where he was told Purkey and Shanks made comments about an African American's hair being "kinky" or "nappy." *Id.* at 22.

According to Morgan, Swift never expressed concern about his performance, although he did acknowledge that Swift expressed concern over the length of Morgan's "plan review process." *Id.* at 25–26. Swift asked Morgan to compare some of their processes with processes used in a different jurisdiction. *Id.* at 27. Morgan disagreed. *Id.* Morgan testified that Swift also had concerns about his ability to use the City's online permit system. *Id.* at 27–28. Morgan did not receive a three-month performance review. *Id.* at 31.

Regarding salary, according to the City's records, at the time Morgan was hired, Shanks' annual salary was $80,000 and Purkey's was $83,700. ECF No. 68-1. Division Chief Ronald Wasilak's salary was $125,088.50 per year, and he was hired on September 9, 1996. ECF No. 68-1. Division Chief David Levy's salary was $117,952.85 per year, and he was hired on October 10, 2005. *Id.* [2] Wasilak and Levy are both Caucasian. Other than Morgan, all division

---

[2] Morgan testified that he believed Purkey was making approximately $95,000 per year, Shanks was paid between $84,000 and $87,000 per year, and a block grant writer subordinate to Morgan was earning close to $90,000 per year. *Id.* at 40–41. Morgan believed Wasilak's salary was close to $130,000 per year and Levy's yearly salary was around $125,000. ECF No. 48-2 at 43–44.

chiefs[3] had been working for the City since at least 2007, and were earning between $100,000 and $160,000 yearly. *Id.*

Morgan asserts that, on February 1, 2012, he received his six-month evaluation and Swift failed him in "every conceivable performance category." ECF No. 13 at ¶ 15. Morgan's review was provided to the Court. *See* ECF No. 69-1. It is dated February 9, 2012 and he received a successful rating in three categories, an acceptable rating in six categories, and an unsatisfactory rating in three categories. *Id.* Morgan also argues that he was terminated on or around February 6, 2012. ECF No. 68 at 4. However, Defendants have provided a termination letter dated March 1, 2012, stating that Morgan's termination date would be effective March 9, 2012. ECF No. 69-2. On February 29, 2012, Swift supplied a memorandum to the City's Manager and Human Resources Director informing them why Morgan was to be separated from employment during his probationary period. ECF No. 48-7. She wrote:

> The following examples and attachments provide documentation of serious performance deficiencies for Mr. Courtney Morgan, as Chief of the Inspection Services Division. Upon his arrival, I provided him with a work program and my goals for him and his division. I explained that the division was very competent and operated well but that his job would be to take them (gradually) to the next level of improved technology and customer service.
>
> I have coached him on ways to lead his team, gain their respect and become "an insider." I have provided advice and background on personnel and supervisory issues and have provided close supervision to help him manage assignments via one-on-one weekly meetings over the last 4 months. All of the following examples are from direct, personal interaction with me, his direct supervisor. Although Mr. Gunning has had less interaction and attended a few of the weekly meetings, some of these examples are supported or supplied by him. Unfortunately, no improvement in performance is evident, and as assignments have become more complex and more like projects than tasks, such

---

[3] Terrance N. Treschuk was the Chief of Police, Carlos Vargas was the Chief Human Resources Officer, Ronald Wasilak was the Chief of Planning, Emad Elshafei was the Chief of Traffic and Transportation, Mark Charles was the Chief of Environment Management, David Levy was the Chief of Long Range Planning, and Michael Wilhelm was the Chief of Construction Management. ECF No. 68-1.

> as Chapter 5, performance and project management skills have not been acceptable.
>
> As a result of these deficiencies and the fact that these include basic skills and knowledge of the Inspection Services Division Chief job description, he is being dismissed during his probationary period.

*Id.* The memorandum goes on to point out specific examples of Morgan's deficiencies in understanding job responsibilities and assignments, accuracy, and technical knowledge. ECF No. 48-7 at 1–3. Attached to the memorandum were several documents provided as examples of instances where Morgan was asked to resubmit drafts of documents after failing to follow Swift's direction. ECF No. 48-7 at 4–19.

After he was terminated, Morgan complained of harassment and discrimination by Swift to Carlos Vargas, the human resources director. ECF No. 48-4 at 6–7. Vargas informed Morgan that "there was nothing he could do to help him." *Id.* at 7. After his termination, Morgan was unemployed until April 30, 2012 when he became employed with Montgomery County Schools as an engineer for an annual salary of $93,000. ECF No. 48-4 at 3. The City has not hired anyone to replace Morgan. ECF No. 48-5 at 10.

On April 4, 2013, Morgan filed this action in the Circuit Court for Montgomery County, Maryland claiming that the City's decision to terminate him was the result of racial discrimination in violation of Title VII. *See* ECF No. 1. On May 13, 2013, the City removed the case to this Court. *See id.* Morgan amended his Complaint on August 14, 2013 replacing violations of Title VII with violations of 42 U.S.C. § 1983 and adding Susan Swift as a defendant. ECF No. 13. Defendants filed a motion to dismiss for failure to state a claim. ECF No. 10. That motion was denied on December 30, 2013. ECF No. 21. Discovery is now complete

and Defendants have filed a motion for summary judgment. *See* ECF No. 48. For the reasons discussed more fully below, Defendants' motion for summary judgment is granted.[4]

## II.     STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, if the non-movant's statement of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, the court should not adopt that version of the facts for the purposes of ruling on a Motion for Summary Judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[4] The City also renews its motion to dismiss based on Morgan's misrepresentation of a material fact in his opposition to the City's motion to dismiss. ECF No. 48-1 at 20–21.

### III.   DISCUSSION

#### A.  Susan Swift

Employment discrimination cases brought under 42 U.S.C. § 1983 are reviewed under the same framework as those brought under Title VII. *Abasiekong v. City of Shelby*, 744 F.2d 1055, 1058 (4th Cir. 1984). "A plaintiff generally may defeat summary judgment and establish a claim for race discrimination through one of two avenues of proof." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). A plaintiff may defeat summary judgment by presenting direct or circumstantial evidence that race was a motivating factor of the employer's adverse employment action. *Id.* at 213–14. Alternatively, without evidence that race was a motivating factor, the plaintiff may proceed under the familiar burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 214.

Morgan seeks to prove race discrimination by proceeding under the burden-shifting framework. *See* ECF No. 68 at 7–8. Under that framework, Plaintiff has the initial burden to establish a prima facie case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996). If the plaintiff produces evidence for each element of the prima facie case, the burden of production shifts to the employer to articulate a "legitimate, nondiscriminatory" reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the employer produces evidence of a nondiscriminatory reason for its actions, the burden returns to the plaintiff to show that "the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). If the plaintiff cannot produce evidence that would allow the trier of fact to find the employer's reasons were a pretext for discrimination, defendant is entitled to

7

summary judgment as a matter of law. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 320 (4th Cir. 2005). "The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against h[im]." *Evans*, 80 F.3d at 959 (citations omitted). Morgan complains of two acts of intentional discrimination: termination and reduced compensation.

### 1. Termination

To demonstrate a prima facie case of racial discrimination with respect to termination, a plaintiff must show that "(1) he is a member of a protected class; (2) he suffered [an] adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland*, 487 F.3d at 214 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

It is undisputed that Morgan is a member of a protected class (he is African American), and suffered an adverse employment action (he was terminated). It is also undisputed that Morgan's former position (Chief of Inspection Services) remains open. ECF No. 48-5 at 10. As to the third element, in determining whether a plaintiff was meeting legitimate expectations, "it is the perception of the decision maker which is relevant." *Evans,* 80 F.3d at 960–61 (quoting *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980)). Here, Morgan gave somewhat conflicting accounts during his deposition testimony concerning whether Swift felt Morgan was performing his job duties at expectation. While Morgan testified that Swift never expressed concern about his performance, ECF No. 48-2 at 25, he also acknowledged that Swift did express concern to him over the length of Morgan's "plan review process." *Id.* at 26. He also testified that Swift asked him to review the processes of a different jurisdiction and Morgan disagreed. *Id.* at 27. Morgan further testified that he was aware that Swift had concerns about his inability to use the City's

online permit system. *Id.* at 27–28. Hence, Morgan's "self-assessment," particularly without more, does not show that he was meeting his employer's legitimate expectations. *Evans,* 80 F.3d at 960-961; *see Pepper v. Precision Valve Corp.,* 526 F. App'x 335, 337 (4th Cir. 2013) (recognizing that plaintiff's "self-serving statements regarding his job performance are insufficient to show that he met [his employer's] legitimate performance expectations").

Even assuming that Morgan could establish a prima facie case,[5] Defendants have put forth evidence of a legitimate, nondiscriminatory reason for terminating Morgan. Specifically, Defendants point to a memorandum that Swift authored and sent to the City Manager and Human Resources Director on February 29, 2012. In that memorandum, Swift catalogued the reasons why Morgan was being terminated during his probationary period. *See* ECF No. 48-7. She noted that Morgan was unable to satisfactorily perform discrete tasks; explained that his project management skills were not acceptable when he was assigned project tasks that were more complex; and provided examples of Morgan's inability to understand his job responsibilities and assignments, his inaccuracy, and his lack of technical knowledge. *Id.* In addition to describing examples, the memorandum attached emails between Morgan and Swift showing instances where Morgan was asked to resubmit drafts of documents. *Id.* at 4–19.

When an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, "it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette*

---

[5] In cases where the employer proffers evidence of a legitimate reason for its adverse action in its motion for summary judgment, "it is a common practice of the Fourth Circuit to assume, without deciding, that the plaintiff has established a prima facie case" and move on to whether plaintiff has produced evidence of pretext. *Mandengue v. ADT Sec. Sys., Inc.*, No. 09-3103, 2012 WL 892621, at *16 (D. Md. Mar. 14, 2012) (citing, e.g., *Holland*, 487 F.3d at 218; *Hux v. City of Newport News*, 451 F.3d 311, 314 (4th Cir. 2006); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (*en banc*)).

*v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citation omitted). To show pretext, the plaintiff must proffer sufficient evidence to allow a trier of fact to find, by a preponderance of the evidence, that the proffered reasons for the employer's actions were not the true reasons for the actions but were pretexts for discrimination. *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (citing *Reeves*, 530 U.S. at 143). Thus, plaintiff must either show that the employer's explanation is "unworthy of credence or offer other evidence that is sufficiently probative of intentional discrimination." *Moore v. Leavitt*, No. 04-2819, 2007 WL 5123539, at *3 (D. Md. Feb. 9, 2007) (citing *Mereish v. Walker* 359 F.3d 330, 336 (4th Cir.2004)) (internal quotation marks omitted).

Morgan faces an even steeper hill to climb here because the same individual, Swift, hired and fired him. When "the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone*, 945 F.2d 796, 797–98 (4th Cir. 1991). It was Swift who originally offered Morgan an interview, was part of his interview panel, recommended that Morgan be hired, and called Morgan to inform him that the City had decided to hire him. ECF No. 4–14 & ECF No. 48-6. While Swift may not have made the final decision to hire Morgan, the logic that "[e]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing" applies equally to Swift who hired Morgan in all practical respects.[6] *See Proud*, 945 F.2d at 798. While Morgan's opportunity to present evidence

---

[6] Defendants earlier filed a Motion to Dismiss based, in part, on *Proud v. Stone*, which was denied. ECF No. 21. Morgan contended then that Swift was not involved in his hiring. ECF No. 16 at 5. Defendants argue that because Morgan has since testified that Swift was involved in his hiring, Defendants are entitled to renew their motion to dismiss. ECF No. 48-1 at 20. The Court again DENIES Defendants' Motion to Dismiss. Even if Plaintiff had acknowledged Swift's

of pretext is not foreclosed, in most cases where the employee was hired and fired by the same person within a relatively short time span (here, six months), "such evidence will not be forthcoming." *See id.* Such evidence has not arrived here.

Morgan argues that Swift's articulated reasons for termination are unworthy of credence for two reasons. First, Morgan argues that the lack of a three-month review shows that Swift either did not want to create a paper trial of Morgan's sufficient performance or did not want to give Morgan a chance to correct any performance failures because of racial animus. *See* ECF No. 68 at 8–10. Second, Morgan argues that Swift's failure to outline the reasons for termination to the human resources department before termination is evidence of discriminatory intent because the failure to do so was against City policy. *See id* at 9.

Morgan's arguments are speculative and are contradicted by the evidence in the record. Regardless of whether a formal three-month review was performed, Morgan was clearly provided consistent feedback regarding performance—Swift met with Morgan weekly and sent Morgan several emails expressing concern over his work product. ECF No. 48-2 at 16, 26–28 & ECF No. 48-7 at 4–19. As for Morgan's contention that Swift failed to articulate her reasons for termination to human resources before terminating Morgan, the record refutes this timeline. Defendants' produced documentary evidence that Morgan was not terminated until after the memorandum containing the reasons for termination was sent to human resources. ECF No. 69-2. As Morgan's timeline is "blatantly contradicted by the record," the Court is entitled to reject

---

involvement at the time of the Motion to Dismiss, that would not have automatically led to dismissal. As Judge Grimm explained in the Memorandum Opinion denying Defendants' Motion to Dismiss, "it is unclear whether the inference recognized in *Proud* is applicable at the motion to dismiss stage, where all inferences must be drawn in favor of the Plaintiff." ECF No. 21 at 7. Indeed, the Fourth Circuit in *Proud* specifically noted that "the plaintiff still has the opportunity to present countervailing evidence of pretext . . ." 945 F.2d at 798. Thus, the Court analyzes whether Plaintiff has presented evidence to overcome the inference at the current summary judgment stage.

it. *See Scott*, 550 U.S. at 380–81. Yet even if the memorandum was sent after termination, there is ample evidence through testimony and documents that Swift's reasons for termination were genuine even if she did not follow policy in her timing of the memorandum. Swift was concerned about Morgan's performance, expressed those concerns to Morgan, and provided Morgan with his six-month review before termination. ECF No. 48-2 at 16, 26–28 & ECF No. 69-1. *Cf. Jyachosky v. Winter*, 343 Fed. Appx. 871, 876 (4th Cir. 2009) (finding employee failed to show evidence of pretext through positive performance reviews where there was other documented evidence that she was having problems with her supervisory role). Morgan has not presented evidence that would create a dispute of fact over whether the reasons for his termination were pretexts for discrimination. As such, Morgan has not overcome the strong inference created by *Proud v. Stone* that Swift's stated reasons for terminating Morgan were not pretextual. *See Proud*, 945 F.2d at 797–98.[7] Thus, Morgan has failed to establish a prima facie case and, in the alternative, he has failed to show that his employer's reasons for termination were pretextual. Swift is entitled to summary judgment.

### 2. Compensation

"To establish a prima facie case of racial discrimination with respect to compensation, a plaintiff must show that []he was paid less than a similarly situated individual not in h[is] protected class." *Coates v. Abbeville Cnty*, 153 F.3d 719 at *2 (4th Cir. 1998) (citing *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994)). When a plaintiff bases the discrimination entirely upon a comparison to employees from outside his protected class, like Morgan does, he "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Sawyers v. United Parcel Serv.*, 946 F.Supp.2d 432, 442 (D. Md. 2013) *aff'd,* 13-

---

[7] Even without the *Proud* inference, on this record, the Court would find that Plaintiff had not met his burden.

1777, 2014 WL 2809027 (4th Cir. June 23, 2014) (citations and internal quotation marks omitted). "The similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

Morgan was hired as the Chief of Inspection Services and compares his starting compensation with all other "chiefs." While it is true that Morgan, whose starting annual salary was $95,000, was paid at least $20,000 less than all other chiefs, ECF No. 68 at 10–11, Morgan has not presented evidence that the similarities between him and other chiefs extend beyond the rank of "chief." Morgan fails to identify any information that would show if he and the other chiefs had similar experience, education, duties, or qualifications. *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F.Supp. 2d 577, 592 (D. Md. 2012) ("The appropriate factors to consider in a discriminatory compensation claim include whether the Plaintiff and those who []he claims are similarly situated had the same or substantially similar experience, education, duties, and qualifications.") (quoting *Williams v. Carolinas Healthcare Sys.,* Case No 3:10–cv–232–GCM, 2011 WL 1131087, at *3 (W.D.N.C. Mar. 25, 2011)); *Itrube v. Wandel & Golterman Techs., Inc.*, 23 F.3d 401 at * 4 (4th Cir. 1994) ("To establish a prima facie case of discriminatory compensation an employee . . . must establish that the work was substantially equal in degree of skill, effort, and responsibility and was performed under similar conditions."). Morgan fails to note whether his position had the same salary range as other chiefs. He also fails to present evidence that he and the other chiefs had similar responsibilities, dealt with the same supervisor, or were subject to the same standards. *Haywood v. Locke,* 387 F. Appx. 355, 359 (4th Cir. 2010) ("[s]uch a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the

employer's treatment of them for it.'") (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)). Thus, Morgan's comparison of titles is not a meaningful one because he has not eliminated variables, such as differing roles, performance histories, or decision-making personnel. *See Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel . . . .").

Looking at the little evidence presented—a chart revealing names, positions, hire dates, and annual salaries—some differences are unmistakable and cut against Morgan. Morgan was a probationary employee who was hired in 2011 while all other division chiefs had been in their positions for at least four years before Morgan was hired. *See* ECF No. 68-1; *see also Morrall v. Gates,* 370 Fed. Appx. 396, 396 n.1 (4th Cir. 2010) ("the two individuals identified by [plaintiff] were not similarly-situated because there was no evidence that they were probationary employees at the time of their alleged misconduct."). For example, Morgan specifically identifies the chief of police, Terrence Truschuk, and the chief of planning, Ronald Wasilak, as similarly-situated individuals. ECF No. 68 at 10–11. Mr. Truschuk was hired in 2001 and Mr. Wasilak was hired in 1996. *See* ECF No. 68-1. Further, the employees are all chiefs of different divisions, and the Court makes no large leap in concluding, for example, that the job responsibilities of the Chief of Police are different from the job responsibilities of the Chief of Inspection Services. Thus, the evidence suggests that Morgan's starting salary cannot fairly be compared with the salaries of other chiefs who had tenure of four years or more and were chiefs of different divisions.[8] Given that Morgan bases his assertion of compensation discrimination completely on

---

[8] Indeed, the performance review document shows that employees were, at least partially, paid based on performance. ECF No. 69-1. By receiving high ratings, an employee's base salary could increase 3.5 percent or more after the performance review. *Id.*

comparison to chiefs outside his protected class, the validity of Morgan's prima facie case depends on whether those chiefs were, in fact, similarly situated to Morgan. *See Haywood*, 387 F. Appx. at 359 ("the plaintiffs have based their allegations completely upon a comparison to an employee from a non-protected class, and therefore the validity of their prima facie case depends upon whether that comparator is indeed similarly situated.") (citations omitted). The evidence is to the contrary. Thus, Morgan has failed to make a prima facie case of discrimination based on compensation and Swift is entitled to summary judgment here as well.[9]

## B. City of Rockville

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality may be liable under 42 U.S.C. § 1983 "where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell*, 426 U.S. at 694). "Plaintiffs who seek to impose liability on local governments under [42 U.S.C.] § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (citing *Monell*, 436 U.S. at 691). Thus, if "there are no underlying constitutional violations by any individual, there can be no municipal liability." *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir.

---

[9] Morgan brings this suit against Swift in her official capacity. *See* ECF No. 9 at 3 ("Moreover, the Amended Complaint merely . . . adds a Co-Defendant in her official capacity as a state actor ('Susan Swift')"). Defendants perfunctorily argue that given that Swift is being sued in her official capacity, Count I is no different from a claim against the City and should be dismissed as duplicative. ECF No. 48-1 at 36. Morgan fails to respond to this argument and has conceded the issue. *See Ferdinand–Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."); *Mentch v. Eastern Sav. Bank*, FSB, 949 F. Supp. 1236, 1247 (D. Md. 1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of claim). Regardless, this issue is moot because the Court has dismissed Court I on its substance.

1999) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Here, the Court has found

no underlying constitutional violation and the City is entitled to summary judgment.

## IV.    CONCLUSION

For the reasons discussed above, the Court grants Defendants' motion for summary

judgment. Morgan's complaint is therefore dismissed with prejudice.

Dated: March 4, 2015

GEORGE J. HAZEL
United States District Judge